UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-60173-CR-KMW(s) (GRAHAM)

UNITED STATES OF AMERICA

vs.

CAROLYN DENISE WADE and
TRACY D. WADE,

           Defendants.
_____/

## UNITED STATES' SENTENCING MEMORANDUM

**I.    Introduction**

The United States of America, by and through its undersigned counsel, hereby submits this sentencing memorandum as to Defendants Carolyn Denise Wade and Tracy D. Wade (each a "Defendant" and collectively "Defendants"). Defendants are scheduled to be sentenced on February 27, 2025, for their convictions resulting from the jury's verdicts of guilty as to all counts with which they were charged in the Superseding Indictment.[1]

For the reasons addressed herein, the United States respectfully recommends that the Court sentence Tracy Wade to a 14-month term of imprisonment and sentence Carolyn Wade to a 10-month term of imprisonment. The United States further recommends that the Court impose a 3-year term of supervised release to follow each term of imprisonment, and order restitution in the amount of $41,666 as to both Defendants joint and severally. Based upon the counts of conviction, a $700 special assessment is mandatory as to Tracy Wade and a $600 special assessment is mandatory as to Carolyn Wade.

---

[1] On January 21, 2025, Defendants filed a stipulated motion for substitution of counsel (DE 230) and, based thereon, an unopposed motion for a 30-day continuance of Defendants' sentencing hearing (DE 231). The Court granted both motions (DE 233).

The total sentences recommended by the United States are sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in Title 18, United States Code, Section 3553(a).

## II.     Summary of the Offense[2]

This case involved two sworn law enforcement officers who fraudulently obtained loans through the SBA's Paycheck Protection Program ("PPP") during the COVID-19 pandemic. From approximately April 2021 through August 2021, while they were employed as Deputy Sheriffs with the Broward Sheriff's Office (BSO), Defendants committed serious conspiratorial and substantive fraud offenses that resulted in their receipt and forgiveness of PPP loans based upon information Defendants knew was patently false. Specifically, each Defendant received $20,833 (the maximum PPP loan available to a sole proprietor) from an SBA lender for a fake business with fake tax documents. After Defendants received their fraudulent loan proceeds in their personal bank accounts, Defendants wrote checks to themselves with phony memos for "payroll" and "salary," and made additional false statements to the SBA, all to avoid repaying the money that they were never entitled to receive in the first place.

Applying for PPP loans and loan forgiveness was a multi-step process completed online. In this case, most of the online processes occurred on the website of the PPP loan processor (Womply), including creating the PPP application, inputting personal information, uploading bank documents and tax documents, and verifying the applicant's identity. The evidence at trial

---

[2] The United States adopts and incorporates by reference all facts set forth in the Offense Conduct and Role Assessment sections of the Presentence Investigation Report (PSR) as to Carolyn Wade (DE 222 ¶¶7-52) and Tracy Wade (DE 224 ¶¶7-52). The government addressed many of those facts, and the evidence admitted at trial that proved them beyond a reasonable doubt, in its response in opposition to Defendants' post-verdict motion for a judgement of acquittal. *See* DE 207 at 4-11.

established that Defendants started and completed nearly all those steps themselves. For example, Tracy Wade created his PPP application and Carolyn Wade's PPP application using the computer and internet service at Wade Funeral Home; Tracy Wade inputted information into the applications, including the fictitious sole proprietor business names "Tracy Wade" (for his application) and "Carolyn Wade" (for hers); and each Defendant uploaded bank documents into their respective applications, linked their bank accounts to receive the loan proceeds, and independently verified their identities. Overall, Tracy Wade received 30 Womply login codes, performed 17 successful logins to his PPP loan application (and 2 successful logins to Ms. Wade's), made 13 modifications to his PPP application (and 17 modifications to Ms. Wade's), uploaded 4 bank statements, and verified his identity twice. Carolyn Wade received 32 Womply login codes, performed 11 successful logins to her PPP loan application, made 15 modifications, uploaded 3 bank statements, and verified her identity twice.

The only component of the PPP loan application process that Defendants did not directly accomplish themselves was the creation and submission of fake IRS Schedule C tax forms and false income information therein. Defendants outsourced that part of the crime to co-conspirator Haydee Rivero, f/k/a Haydee Granados ("Rivero"), and paid her $2,000 for doing so ($1,000 for each fake Schedule C for each PPP application). Defendants' PPP applications on Womply's website were accessible only using one-time, short-lived passcodes, which Defendants received via email or text message and provided to Rivero so she could log in to Defendants' applications and upload the fake tax documents. After Rivero uploaded the fake Schedule C forms for each Defendant (and inputted the fake income numbers), Rivero's role in the PPP application process for Defendants was finished.

The last step of the PPP application process was to acknowledge and sign the actual PPP loan application (SBA Form 2483-C) and related loan documents via DocuSign, which included certifying that all the information provided in the application and all supporting documents was true and accurate in all material respects. Each Defendant handled the DocuSign component of their PPP applications themselves. Indeed, each Defendant opened, viewed, initialed and signed their respective PPP loan applications and related loan documents via DocuSign on multiple occasions on different days. Tracy Wade electronically initialed and signed 3 separate, but identical, PPP loan applications (SBA Form 2483-C) and Carolyn Wade electronically initialed and signed 2 separate, but identical, PPP loan applications (SBA Form 2483-C).

Tracy Wade received the proceeds of his PPP loan ($20,833) on June 3, 2021, and Carolyn Wade received hers ($20,833) four days later (on June 7). Immediately upon receipt of each loan, each Defendant sent $1,000 to Rivero via Zelle for having provided the fake tax documents for their PPP loans. Over the next few days and weeks, Tracy Wade wrote 4 checks (totaling $13,408) and Carolyn Wade wrote 10 checks (totaling $13,900) to fabricate payroll to themselves. After doing so, Defendants applied to the SBA for forgiveness of their PPP loans. That process involved another application (SBA Form 3508S) in which each Defendant falsely represented, among other things, the number of employees they had for their fake sole proprietorships, the amount of their PPP loans they had purportedly spent on payroll, and that they had complied with all the PPP rules and regulations. Each Defendant initialed and signed their respective forgiveness application (SBA Form 3508S). Based on that false information and false certifications, the SBA forgave both of Defendants' PPP loans totaling $41,666.

**III.     Procedural History**

This prosecution began with an indictment returned by the Grand Jury on September 14, 2023 (DE 3), which charged only Carolyn Wade with one count of wire fraud in violation of Title 18, United States Code, Section 1343.  Ms. Wade proceeded to trial on that indictment in May 2024 and the jury was unable to reach a unanimous verdict, resulting in a mistrial (DE 72).

On June 27, 2024, the Grand Jury returned the Superseding Indictment (DE 188), which charged Defendants with the following offenses: conspiracy to commit wire fraud, in violation of Tile 18, United States Code, Section 1349; wire fraud, in violation of Tile 18, United States Code, Section 1343; conspiracy to make false statements to the SBA, in violation of Tile 18, United States Code, Section 371; and false statements to the SBA, in violation of Title 15, United States Code, Section 645(a).

Trial commenced on October 7, 2024.  In its case in chief, the government called 9 witnesses (DEs 172-175 &178) and introduced 152 exhibits into evidence (DE 191).   At the close of the government's case in-chief, Defendants moved *ore tenus* for judgment of acquittal pursuant to Rule 29.  The Court heard argument and denied the motion (DE 178).  Defendants then presented a case in which they called 5 witnesses (DEs 178 & 180), including Defendant Tracy Wade, and introduced 14 exhibits (DE 192).   At the close of the defense case, Defendants renewed their *ore tenus* Rule 29 motion.  The Court heard additional argument and denied the motion again.

The jury began to deliberate on October 22.   On October 23, the jury returned verdicts of guilty as to each Defendant on all counts with which they were charged, respectively (DEs 183 and 184).  The Court adjudicated Defendants guilty consistent with the jury verdicts (DE 182),

deferred sentencing, and ordered presentence investigations. Defendants filed a post-verdict motion for judgment of acquittal on November 6, 2024 (DE 204), which the Court denied in a written Order entered on January 10, 2025 (DE 213).

The U.S. Probation Office ("Probation") disclosed the draft PSRs as to Carolyn Wade and Tracy Wade on December 17, 2024 (DE 209) and December 18, 2024 (DE 210), respectively. Each Defendant filed written objections to their respective PSR on January 10, 2024 (DE 214 as to Carolyn Wade and DE 215 as to Tracy Wade). The United States filed its responses to Defendants' objections on January 15, 2025 (DE 218 as to Carolyn Wade and DE 219 as to Tracy Wade). Probation disclosed the PSRs with addendums on January 15, 2024 (DE 222 as to Carolyn Wade and DE 224 as to Tracy Wade) and Defendants each filed a motion for a downward variance requesting probationary sentences (DE 220 as to Carolyn Wade and DE 221 as to Tracy Wade). As set forth below, the United States opposes a downward variance for each Defendant.

### IV.     Sentencing Guidelines Computation

As computed by Probation in the PSRs as to Carolyn Wade (DE 222) and Tracy Wade (DE 224), the advisory sentencing range under the 2024 Guidelines Manual ("Guidelines") for each Defendant is 8-14 months' imprisonment based upon a total offense level of 11 and a criminal history category of I (zero criminal history points). The offense level is calculated as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1(a)(1)) | 7 |
| The Defendants are accountable for a loss of at least $41,666. As the loss is more than $40,000 and less than $95,000, the offense level is increased by six levels, pursuant to § 2B1.1(b)(1)(D). | 6 |
| The Defendants meet the criteria at §§ 4C1.1(a)(1)-(10). Therefore, the Defendants are Zero-Point Offenders, and the offense level is reduced by two levels, §§ 4C1.1(a) and (b). | -2 |
| **Total Offense Level** | **11** |

The PSRs correctly compute the offense level for each Defendant. Defendant Tracy Wade did not file an objection to this computation. Defendant Carolyn Wade objected to her offense level computation, asserting that she should only be held responsible for the loss associated with her fraudulent PPP loan of $20,833 (DE 214 at 3). However, as the United States explained in its response to Carolyn Wade's objections to her PSR, Probation has correctly calculated her loss amount because a district court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy. *United States v. Moran*, 778 F.3d 942, 974 (11th Cir. 2015). Here, in addition to the loss resulting from Carolyn Wade's fraudulently obtained PPP loan ($20,833), the loss resulting from co-conspirator Tracy Wade's fraudulently obtained PPP loan ($20,833) was in furtherance of the conspiracy and foreseeable to Carolyn Wade based upon the evidence in the record and the jury's guilty verdict on the conspiracy offenses (Counts 1 and 4). Therefore, the Court should overrule Carolyn Wade's objection to paragraph 60 of the PSR and find that, like Tracy Wade, her total offense level is 11.

V.      **Consideration of Sentencing Factors Under 18 U.S.C. § 3553(a)**

Title 18, United States Code, Section 3553(a), enumerates several factors that the Court must consider in sentencing a defendant. As addressed in turn below, the 3553(a) factors relevant to each Defendant support the individual sentences recommended by the United States, that is, a 14-month term of imprisonment as to Tracy Wade and a 10-month term of imprisonment as to Carolyn Wade, with each to be followed by a 3-year term of supervised release. These sentences are sufficient, but not greater than necessary, to achieve the goals of sentencing.

1. **Nature and Circumstances of the Offense.**

A jury found Defendants guilty of every offense with which they were charged in the Superseding Indictment—that is, conspiracy to commit wire fraud, wire fraud, conspiracy to commit offenses against the United States, and false statements to the SBA. These are serious felonies that Defendants committed over several months during the COVID-19 pandemic. Moreover, their conduct harmed a program that Congress created in response to the pandemic to help small business owners and their employees whose livelihoods were jeopardized by the shuttering of business operations and cash flow. Indeed, the PPP was designed as a lifeline to small business employees by protecting their paychecks. Funds for the PPP were limited, and the legitimate demand for relief money quickly exceeded the available supply.

In 2021, Congress authorized additional funding for the PPP since the pandemic was far from over. Defendants, then sworn law enforcement officers who were continuously employed by BSO during the pandemic and received their BSO salaries uninterrupted, selfishly exploited this declared national emergency, and the government's response to it, by lying to get PPP loans that they were not entitled to receive.

Furthermore, the nature of the offense involved Defendants performing multiple steps on their own to cause the SBA to fund and forgive their fraudulent PPP loans. As established at trial, Defendants' fraudulent loans were not the result of a single click or one transaction. Rather, Defendants applied for their fraudulent PPP loans by accessing their online applications numerous times, inputting false business names and other false information, uploading bank statements, verifying their identifies, certifying they were providing truthful information, and initialing and signing multiple documents, multiple times, on multiple occasions. By contrast, Rivero's part

was limited to creating and uploading the fictitious Schedule C for each Defendant's application after Defendants have provided her with the access codes to do so. For her part, each Defendant paid Rivero $1,000 immediately upon receipt of their respective PPP loan.

After Defendants received their fraudulent PPP loans in their personal bank accounts, their offense conduct continued by writing sham "payroll" and "salary" checks to themselves to fabricate payroll. This too was not a single occurrence, but repeated actions by Defendants over several days and weeks taken in anticipation of applying for forgiveness of their fraudulent PPP loans. When Defendants applied for forgiveness in August 2021, they continued to lie to the SBA by submitting additional false statements and false certifications that they initialed and signed, including falsely representing that Defendants had been entitled to the loans in the first place. Defendants made no effort to repay any of the fraudulently obtained money until after they were convicted at trial.

For these reasons, the nature and circumstances of the offense supports the sentences recommended by the United States for each Defendant.

**2.     History and Characteristics of the Defendants.**

**A.     Tracy Wade**

Tracy Wade is a college-educated, career law enforcement officer and business owner. For 25 years (1997 to 2002), he served as a Deputy Sherriff for BSO. Following retirement from BSO in 2022, he served as a police officer for the town of Pembroke Park, Florida. Additionally, since 2011, he has owned and operated Wade Funeral Home. Given his education, training, employment history and business experience, Tracy Wade certainly knew better than to lie to get pandemic relief assistance for himself and his wife. Against this backdrop of success and

9

opportunity, Tracy Wade's guilt in this case reflects a person motivated by shortsighted greed who blatantly disregarded the law because he thought he would not get caught. His commission of this crime when he was a sworn Deputy Sheriff also harms the public's trust in law enforcement. Tracy Wade has not accepted responsibility for his criminal conduct nor shown any remorse.

Notably, Tracy Wade was not only found guilty of crimes of dishonesty, he testified untruthfully at both the May 2024 and October 2024 trials of this cause. In the first trial, before he was a defendant, Tracy Wade falsely portrayed himself and his Carolyn Wade as unknowing and naive victims who were duped by Rivero. He falsely told the jury that he did not know Carolyn Wade's PPP application contained false information until the night before she was arrested, and he minimized his role in the application process by shifting the blame entirely on Rivero and her husband. Examples of this included, but were not limited to, his testimony that he "didn't fill out anything" (DE 106 at 12), and that Rivero "had access to everything," including his email account and Carolyn Wade's email account (DE 106 at 13, 19) and DocuSign (DE 106 at 19-20). He also testified that he did not have "any reason" to believe that Rivero was engaging in some type of fraudulent behavior (DE 106 at 23). Yet, when confronted with the sham "salary" checks written to him by Carolyn Wade, he concocted a story belied by common sense (DE 106 at 98-102).

Tracy Wade told these and other falsehoods in the second trial when he waived his right to remain silent and exercised his right to testify as a defendant. Examples included, but were not limited to, his testimony that he did not know the PPP applications contained false information during the application process; that he had no discussion of any fraudulent activity with Rivero;

10

and that Rivero never mentioned a Schedule C (*e.g.*, 10/21 Tr. at 8-9, 28-32, 83-84).[3] He also repeated the lies that he and Carolyn Wade gave Rivero access to their email accounts (*e.g*, 10/21 Tr. at 20-21), and even suggested that someone else at his home had signed his forgiveness application via DocuSign (*e.g.*, 10/21 Tr. at 119-120). The digital records, however, flatly contradicted Tracy Wade's testimony by establishing his and Carolyn Wade's direct involvement in the PPP loan and forgiveness application processes. When confronted with this evidence during cross-examination, Tracy Wade was evasive and flip-flopped between accepting the uncontroverted data as true (*e.g.*, 10/21 Tr. at 68-70, 75-76, 80, 86) and suggesting someone else could have been responsible for his actions (*e.g.*, 10/22 Tr. at 9-11). Tracy Wade went so far as to tell the jury that he had "hired a private investigator" during the overnight recess between the second and third day of his testimony (10/22 Tr. at 7). Tracy Wade also maintained that the "salary" memo in the checks he received from Carolyn Wade was an accurate description even though he admitted he was never Carolyn Wade's employee (10/22 Tr. at 24-25).

Moreover, in the second trial, the jury heard Tracy Wade testify after Rivero had testified about the understanding she had with Defendants regarding her creation of fictitious Schedule C forms for their PPP loan applications. Specifically, Rivero testified that, during a phone call with Tracy Wade, she told him that to receive a PPP loan of $20,000, Rivero would need to create a Schedule C that reflected $100,000 in gross income for a business in Tracy Wade's own name (that is, not for Wade Funeral Home). The jury's guilty verdict on all counts reflects their finding that Rivero was credible and Tracy Wade was not.

---

[3] The cited excerpts of the transcript of Tracy Wade's testimony on October 21, 2024 ("10/21 Tr.") and October 22, 2024 ("10/22 Tr.") are filed herewith as attachments 1 and 2, respectively, since they are not yet publicly available via PACER.

In assessing the history and characteristics of Tracy Wade, the Court should also consider that he sought from the SBA other forms of pandemic relief based on false information. As he admitted on cross examination, Tracy Wade applied for an Economic Injury Disaster Loan (EIDL) for Wade Funeral Home (10/22 Tr. at 50-52). However, the two separate sets of EIDL applications for Wade Funeral Home, which Tracy Wade submitted in April and May 2020, each overstated revenue and expenses of Wade Funeral Home by hundreds of millions of dollars. The first EIDL application falsely stated that, for the 12-month period ending January 31, 2020, Wade Funeral Home had $465 million in gross revenue and $175 million in costs of goods sold (PSR ¶135). The second EDIL application (which Tracy Wade submitted while the first was still pending) falsely stated that, for that same period, Wade Funeral Home had $350 million in gross revenue and $250 million in costs of goods sold (PSR ¶136). Because EIDL loans were calculated based upon profit (revenue less expenses) and capped at $150,000, each one of these applications for Wade Funeral Home sought the maximum EIDL available during the pandemic.

Tracy Wade further admitted on cross examination that he contacted the SBA multiple times to check the status of these applications (10/22 Tr. at 55), but he did not correct the false information in the applications until the SBA required him to supply a copy of Wade Funeral Home's 2019 tax return to substantiate the purported revenue and expenses. That tax return reported revenue of $345,359 and expenses of $165,339, which entitled Wade Funeral Home to an EIDL of $80,000 (roughly half of the maximum $150,000 EIDL he originally sought). Tracy Wade testified that the false information in the two EIDL applications were typographical errors (10/22 Tr. at 53-54). However, the likelihood of two separate sets of typographical errors,

12

submitted over a month apart and each inflating revenue and expenses by different amounts in the hundreds of millions of dollars, is not credible.

The government also introduced at trial evidence of yet another PPP loan application for Wade Funeral Home. Government Exhibit 2002 was an email with an attachment referencing a completed loan application, dated May 6, 2021, for a PPP loan for Wade Funeral Home in the amount of $701,873. When questioned about this application on cross examination and shown the application documents, Tracy Wade denied knowing anything about it (10/22 Tr. at 40-42). However, it is impossible to ignore the striking pattern in this case: five separate applications seeking pandemic relief from the SBA in 2020 and 2021 in the names of Tracy Wade, Carolyn Wade, and Wade Funeral Home, all of which contained materially false income information.

In sum, the history and characteristics of Tracy Wade, particularly his untruthful testimony at two criminal trials and efforts to obtain additional pandemic relief for Wade Funeral Home based upon false information, support the 14-month term of imprisonment sentence recommended by the United States. This sentence is still within the advisory Guidelines range computed in the PSR and thus accounts for his lack of criminal history.

### B. Carolyn Wade

Carolyn Wade is a college-educated, career law enforcement officer. For 21 years (2002 to 2023), she served as a Deputy Sherriff for BSO. Given her education, training, and employment history, Carolyn Wade certainly knew better than to lie to get pandemic relief assistance. Like her husband, this backdrop of success and opportunity shows that Carolyn Wade was also motivated by shortsighted greed and blatantly disregarded the law because she too

thought she would not get caught. By committing this offense when she was a sworn Deputy Sheriff, Carolyn Wade also harmed the public's trust in law enforcement.

That said, the United States is recommending a lower sentence for Carolyn Wade compared to her co-defendant husband primarily for two reasons. First, Carolyn Wade did not testify falsely at either trial. Second, it does not appear that Carolyn Wade was involved with other fraudulent applications for pandemic relief.

For these reasons, the history and characteristics of Carolyn Wade support the 10-month term of imprisonment sentence recommended by the United States. This sentence is within the advisory Guidelines range computed in the PSR and thus accounts for her lack of criminal history.

**3. Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence to Criminal Conduct.**

As explained above, Defendants have committed serious offenses. Count 1 (conspiracy to commit wire fraud) and Counts 2-3 (wire fraud) each carry a maximum term of imprisonment of twenty years. The sentences recommended by the United States are needed to reflect the seriousness of these offenses, promote respect for the law, and provide just punishment. Although the recommended terms of imprisonment (14-months as to Tracy Wade and 10-months as to Carolyn Wade) are toward the bottom of the overall sentencing table of the Guidelines, and certainly modest in comparison to the maximum penalty under law, these sentences will still send a message that stealing from government programs such as PPP has serious consequences. In this respect, the sentence will also afford adequate general deterrence to this criminal conduct, which is very much needed.

The Eleventh Circuit has explicitly stated that "general deterrence is an important factor in white-collar cases, where the motivation is greed." *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014); *see also United States v. Howard*, 28 F.4th 180, 209 (11th Cir. 2022) (noting that "[g]eneral deterrence is more apt, not less apt, in white collar crime cases. The reason is that economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, which makes them prime candidates for general deterrence.") (internal quotations and citations omitted).

As explained above, greed motivated Defendants to seek PPP loans when they were nevertheless fully employed, and millions of other Americans had lost their jobs from the economic impact of a global pandemic. As the pandemic spread, so too did fraud related to the PPP and EIDL programs and other programs designed to provide critical economic assistance—especially in the Southern District of Florida. The government's recommended sentence of imprisonment in this case is thus appropriate to provide both specific and general deterrence. Such a sentence will send a clear message to Defendants and other offenders that there are serious consequences for defrauding government relief programs. A downward variance in this case for either Defendant would send the opposite message.

4. **Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct.**

In and around September and October 2023, the government initiated criminal cases in this District against 17 former BSO sworn deputies whom the government alleged had fraudulently obtained PPP loans. Except for these Defendants, and two others charged in separate cases, all other defendants accepted responsibility and pleaded guilty. The two other former BSO defendants who proceeded to trial were convicted and sentenced to terms of imprisonment. In

15

March 2024, a jury found former BSO Deputy Sheriff Stephanie Smith guilty of two counts of wire fraud in connection with obtaining two fraudulent PPP loans (Case No. 23-60203-CR-Bloom (Cohn)). She was sentenced to 7 months' imprisonment. In June 2024, a jury found former BSO Deputy Seriff Alexandra Acosta guilty of conspiracy to defraud the United States, false statements to the SBA, and wire fraud, all in connection with obtaining a fraudulent PPP loan (Case No. 23-60170-CR-Scola). She was sentenced to 4 months' imprisonment.

The sentences recommended by the United States will not create an unwarranted sentence disparity among the other former BSO Deputy Sheriffs that have been sentenced thus far (or any other similarly situated defendant). As noted, the former BSO defendants who were convicted at trial received sentences that included terms imprisonment within the Guidelines range computed in their respective case. The Guidelines in this case (8-14 months) are higher because the loss resulting from the offense is greater. Furthermore, every former BSO defendant who received a probationary sentence had accepted responsibility for their conduct by pleading guilty and, in some instances, cooperating with the government. For example, Rivero's sentence of 3 years' probation was not only based upon a Guidelines range of 0-6 months' imprisonment, but also the Court granting a downward departure pursuant to Section 5K1.1 of the Guidelines based upon her substantial assistance in the investigation and prosecution of other individuals, including Tracy and Carolyn Wade.

By contrast, Tracy and Carolyn Wade did not accept responsibility for their crimes and did not cooperate. Tracy Wade's statement in his PSR (¶56) is notably unapologetic. Furthermore, Defendants' Guidelines range does not include zero months' imprisonment, and no variance is warranted for the reasons address above. Based on these distinguishing factors, as well as the

other factors addressed herein, the recommended sentences will not create an unwarranted disparity.

## VI.     Restitution

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A(a)(1). As set forth in each PSR, restitution is owed to the SBA in the amount of $41,666 (Carolyn Wade PSR ¶ 116, Tracy Wade PSR ¶ 128), which represents the amount of the unlawfully obtained PPP loans for Carolyn Wade and Tracy Wade. On January 13, 2025, Defendant remitted this amount to the Clerk of Court (DE 216). However, throughout this case, Defendants never disputed the fact that their PPP loan applications contained false information and that they were not entitled to these loans. Indeed, during cross examination, Tracy Wade acknowledged the blatantly false information in the PPP loan applications for himself (10/21 Tr. at 54-63) and Carolyn Wade (10/22 Tr. at 4-6). Nevertheless, Defendants made no attempt to repay their ill-gotten gains until after they were convicted. As such, the pre-payment of restitution in this case should not be considered as a mitigating factor.

[*Remainder of Page Intentionally Blank*]

**VII.    Conclusion**

For the foregoing reasons, the United States respectfully recommends that the Court sentence Defendant Tracy D. Wade to a term of imprisonment of 14 months, to be followed by three years of supervised release, and sentence Defendant Carolyn Denise Wade to a term of imprisonment of 10 months, to be followed by three years of supervised release.  The United States also requests that the Court order restitution in the amount of $41,666, and special assessments of $700 as to Tracy Wade and $600 as to Carolyn Wade.  These sentences are sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in Title 18, United States Code, Section 3553(a).

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:   */s/ David A. Snider*
David A. Snider
Assistant United States Attorney
Court ID No. A5502260
500 E. Broward Blvd
Fort Lauderdale, FL   33394
Tel: (954) 660-5696
Email: david.snider@usdoj.gov